CARL A. WESCOTT
8210 E. Via de la Escuela
Scottsdale, AZ 85258
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 936 937 2688

FILED
JAN 05 2022
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## DISTRICT OF CALIFORNIA
## NORTHERN DISTRICT

CV22 00070  JCS

CARL A. WESCOTT,

    Plaintiff,

vs.

KEN MATUSOW;
SYNERGICITY, INC.;

    Defendants.

+ DOES 1 through 25

Civil Action No. _____

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

Plaintiff Carl A. Wescott, proceeding *pro se*, complains of Defendants Ken Matusow and Synergicity Inc., and in support of his complaint, the Plaintiff states as follows.

**The Parties: Plaintiff and Defendants**

1. The Plaintiff is an individual presently residing in Scottsdale, Arizona.

2. Defendant Mr. Kenneth Matusow is an individual who resides in Moss Beach, California.

3. Synergicity Inc. is a California Corporation.

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

1

**Further allegations regarding conspiracy between defendants**

4. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Ken Matusow, as an individual, in addition to acting for himself and on his own behalf individually, as well as for the benefit of his marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

5. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the other Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate, including Synergicity Inc.).

6. In addition, upon information and belief, there are even more nefarious corporate, trust, and other entity type Defendants beyond Synergicity, Inc. involved in these conspiracies, currently unknown to Plaintiff. They shall emerge with the benefit of legal discovery.

7. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, any and all such corporate entities, along with Synergicity, Inc., in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

(entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

8. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

**Jurisdiction and Venue**

9. Mr. Ken Matusow lives and works in the San Francisco Bay Area. Synergicity, Inc. is a California corporation. Thus, this Court is the appropriate venue for adjudication of the parties' issues.

10. This is an action for damages pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and a claim for damages greater than US $75,000.

11. Supplemental jurisdiction over the Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367 and the facts that the individual defendant lives and works in this district, the entity defendant is domiciled herein, and the tortious acts, non-acts, and negligence complained of herein occurred in this district, too.

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

**Underlying Facts and Background Context Prior to the LICO deal**

12. Mr. Matusow and the Plaintiff share many aspects of similar business backgrounds. Mr. Matusow and Mr. Wescott are both longtime information technology consultants, and each had his own respective practice before they met in 1995 while the Plaintiff was consulting for Sun Microsystems. Mr. Matusow's consulting background was initially that of a firmware engineer creating embedded systems, but over time he began to manage technical projects and provide other technical resources, culminating in Mr. Matusow providing entire teams of hardware and firmware engineers to complete technical projects for clients. Mr. Matusow formed a company, Détente Consulting, to handle his increasing business. Détente provided hardware and firmware engineers to Sun Microsystems and many other Silicon Valley stalwarts. In 1998, Mr. Matusow sold Détente Consulting to Cadence Design Systems, with the cash and stock deal closing on February 23rd, 1998. Mr. Matusow was astute enough to take mostly stock in the transaction, which was prescient as Cadence Design Systems is now worth approximately $22 billion (as of April 2020 https://finance.yahoo.com/quote/cdns).

13. In those days and years, the Plaintiff was doing well with software consulting. He was an active angel investor, meaning that he personally invested cash into the equity of Silicon Valley startups, often prior to and sometimes alongside Venture Capitalists.

14. The Plaintiff and Mr. Yool Kim also share similar backgrounds, having grown up and attended international schools in Asia, with Rick's high school being Hong Kong International School, while the Plaintiff attended St. Mary's International School in Tokyo.

15. They both worked for small and large technology companies, and originally met while the Plaintiff was working for SK Communications, who had bought Cyworld Inc. Mr. Kim was in

4
**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

business development, and the Plaintiff and Marc Canter helped Cyworld, the Facebook of South Korea, with its worldwide expansion.

16. While Ken Matusow, Carl Wescott, and Yool Kim all have extensive experience working for technology companies, and indeed Synergicity Inc is a technology consulting company, the Plaintiff, more than the other main parties in this case, diversified across sector.

17. The Plaintiff sought further diversification of his cash flow and his investing from software to a lot of real estate investment, beginning with residential rental properties, which he began to acquire in 1996, 1997, and 1998.

18. After the closing of the sale of his company, also in 1998, Mr. Matusow left on a multi-year holiday and travelled Europe and much of Africa. Mr. Matusow has not had to work since the sale of his company, though he continues to dabble and remain engaged with the business world, having a few lunches a week with business contacts, and carrying out an occasional project.

19. The Plaintiff, meanwhile, also continued to do well, expanding his real estate investing and development to residential development in at least a dozen countries outside of the United States. He also began to invest in commercial development projects in the United States, including multi-family, retail, office, hotel, resort, and mixed-use properties and projects.

20. After some years of success, arguably reaching the zenith of his residential investing in 2007 and 2008, the Plaintiff was caught in the global credit crunch of September 2008 and beyond, and ultimately lost all of his significant real assets of value in a chapter 7 bankruptcy filed in January 2012.

5
**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

21. After his bankruptcy, the Plaintiff had to change his approach to real estate as he had no capital to invest. A former California licensed loan broker, he began to raise debt capital for his own projects and for others.

22. Hoping to regain cash flow, the Plaintiff also went back to his roots in technology, beginning an association with an investment firm, the SparkLabs Group http://www.sparklabsgroup.com/, that had its initial operations in Seoul, South Korea, a promising market for startup investment at the time.

**Trips to South Korea and the LICO deal: the Good**

23. The Plaintiff began to travel to Seoul multiple times per year.

24. In 2016 and 2017 and beyond, the Plaintiff recruited Ken Matusow to join the SparkLabs network as a mentor.

25. In 2017, the Plaintiff recruited Yool Kim to come work at the SparkLabs Group, or at various portfolio companies (and one non-SparkLabs company) in 2018, but Mr. Kim had to focus on other aspects of his life.

26. In 2019, the Plaintiff was fired from the SparkLabs Group for ethical reasons (he had some), whereas Mr. Matusow remains involved with SparkLabs Connex http://www.sparklabsconnex.com/ (Exhibit A).

27. The Plaintiff and Mr. Matusow took trips to Seoul together on business, which ultimately led to Mr. Matusow meeting Rick Kim and the main executives at LICO-Art, a company that wanted to develop an LED Amusement Park on an island in the Incheon area near Seoul.

6
**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

28. The LED amusement park was and is the dream of Mr. Su Dong Lee, a former administrator in the city government of Songdo, one of the world's first smart cities.

29. His company, LICO, had entered into contract to purchase a large site on an island in the Incheon area of South Korea, which is also what the nearby Incheon airport is named after.

30. LICO needed a real estate appraisal for the international market and obtained one by hiring Dr. Rene Torres. The Plaintiff was involved for logistics, flying into Seoul to assist Dr. Torres. Rick Kim, a Seoul resident, did a fantastic job of facilitating, providing local support, and translating English to Korean and vice versa for site visits and relevant meetings.

31. LICO needed to raise US $70 million to complete its purchase of the land, the first of four planned phases of the project from a real estate development and financing perspective:

    i. Acquisition via simultaneous close with 1st Deed of Trust private hard money

    ii. Entitlements and refinance with a construction loan.

    iii. Construction and opening, with a refinance after park opening and revenue as an ongoing concern.

    iv. Stabilization and takeout.

32. LICO wanted to have business documents in English besides the appraisal to set the groundwork for foreign investors to make at least the first investment.

33. The parties agreed that LICO would pay Synergicity US $20,000 for those business documents (with an optional US $5,000 more for a pitch deck if the parties deemed it necessary). Synergicity would pay the Plaintiff, who would do all of the work (other than further translation and logistics planned to be provided by Yool Kim).

7
**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

34. The Plaintiff believed with market conditions as they were, that raising the US $70 million needed for phase I, as under 50% LTV 1st Mortgage Debt along with lender's title insurance, would not be difficult. LICO agreed to pay a US $7 million fixed-fee upon successful raise of the US $70 million debt capital.

35. The parties agreed that the Plaintiff would just be paid directly as a consultant for the LICO work with no margin for Synergicity, Inc. However, for the US $7 million fee, since the Plaintiff had sourced the deal, brought the client to the table, negotiated the terms, and written the contract with the client, the parties agreed that the Plaintiff would get paid $6.3 million of the $7 million if the Plaintiff brought the lender/investor to the table for a successful closing for phase I, with the same ratio for phases II, III, and IV. Synergicity, Inc. would get the other $700k in phase 1, but be on the hook for expenses (mostly anticipated to be flying around the world to meet with potential investors)

36. The Plaintiff put together drafts of the needed documents for the consulting project and flew to Seoul in May 2018 to review them with LICO, the end-client that had hired Synergicity Inc for the needed business documents.

37. The Plaintiff (with Rick Kim lending support) met with LICO on May 8th, 2018, to review the partially-completed documents, with a generally positive reception by the two main LICO executives.

38. The parties agreed on the scope of work for a few requested changes and additions to complete the project, hopefully on May 10th, 2018.

39. The Plaintiff added sections and edited the documents.

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

40. On May 10th, 2018 the parties met again, in the LICO offices, with the Plaintiff presenting the completed work.

41. The parties agreed that the work was essentially complete and agreed on the strategy to move forward. LICO did ask for one section to be added/completed, and the Plaintiff noticed a few typos while presenting that he pledged to fix.

42. The Plaintiff completed the minor additions/revisions later in May 2018.

43. Mr Matusow told the Plaintiff that since he had completed the work to LICO's satisfaction, that Mr. Matusow would pay him US $12,000 more (he had already received US $5,000 that went in to an investment in Florida, and reimbursed and paid-for business expenses such as travel to Seoul and cell phone bills).

44. To be clear, the Plaintiff understood that to mean that Ken Matusow would sign a Synergicity Inc. check or wire (for US $12,000) in which the Plaintiff or his designated entity or account was the beneficiary.

**the LICO deal: the Bad and the Ugly**

45. To this day, the Plaintiff has not been paid that US $12,000, and worse yet, the parties have not moved forward with an easy gig to make US $7 million to bring in a single investor, nor on the even bigger fees for phases II, III, and IV.

46. Ken Matusow, as the responsible party and owner of Synergicity, Inc., said that he would work it out with the client to everyone's satisfaction (so that phases I, II, III, and IV of the money-raising portion of the consulting could go forward)

9

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

47. Again, Mr. Matusow was satisfied with the Plaintiff's work and said he would pay the Plaintiff the $12,000, too.

48. However, Mr. Matusow has welched on his commitments including his commitment to pay the Plaintiff.

49. When the Plaintiff checked in 2020 and 2021, it appeared that market conditions had changed, making it quite difficult to close on the purchase with a simultaneous close and a hard money loan (even if Mr. Matusow solved the client issues as promised).

50. The global COVID-19 pandemic has been another factor essentially eliminating any chance of the Plaintiff still earning an easy $6.3 million followed by the larger amounts of phase II, III, and IV (even if Mr. Matusow solved the client issues as promised).

51. The Plaintiff believed it would have been possible to pre-sell, given appropriate market conditions as well as performance on each phase's plans and key metrics by the master developer, LICO, to bring in an investor with plans for that same investor to fund phases I, II, and III (but likely not phase IV which would have been an institutional takeout).

52. While Yool Kim played an important role linguistically and culturally to support the extended team, Ken Matusow, the owner of Synergicity Inc., was and is the party responsible for fixing things with his signed-up corporate client.

53. Unlike the Plaintiff, Ken Matusow and Synergicity had the money to buy a plane ticket to Seoul, and to pay for a translator, to fix any issues and to ensure that the parties moved forward together so that the Plaintiff could simply arrange for some investors to fund the first few phases of the project, metrics and markets willing, so that tens of millions of dollars could come in as rewards for enabling the structural and financial foundation for project success.

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

54. The Plaintiff has been left with no choice but to file this legal complaint to right the scales of justice.

55. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

56. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

**Count I – Breach of Contract**

57. The Plaintiff realleges paragraphs 1-56 as if fully set out herein.

58. The Plaintiff entered into a valid, binding contract with Mr. Matusow concerning Synergicity's payment of US $12,000 upon completion of the documents the Plaintiff delivered.

59. The Plaintiff fully performed and LICO, the end-customer, was happy and approved of the quality of the Plaintiff's work product.

60. Mr. Matusow and Synergicity Inc. breached the parties' contract by refusing to pay Plaintiff the US $12,000 owed.

61. The Plaintiff has been damaged as a result of the Defendants' breaches and repudiations by losing US $12,000 as of June 2018, as well as the consequences of not having that money, and a a

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

speculative percentage of the US $7 million phase for phase I and smaller percentages of phases II, III, and IV, and significant secondary collateral opportunity costs.

62. All allegations, probabilities for the speculative portion, and specific damages to be fully proven at jury trial.

**Count II – Promissory Fraud**

63. The Plaintiff realleges paragraphs 1-56 as if fully set out herein.

64. In 2017 and 2018, Matusow induced the Plaintiff to enter into the parties LICO-related contracts by representing that he fully intended to honor those contracts. We shall refer to Mr. Matusow's such representations over time as "the Representations."

65. As fraud must be pled with specificity and particularity, the Plaintiff will fill in future details of the exact date and time of Mr. Matusow's emailed Representations made by email, and will use phone records to more fully plead promissory fraud (dates and times) with those Representations made by phone and in person.

66. Matusow knew at the time he made the Representations that he had no intention to honor his contracts with the Plaintiff.

67. Indeed, Matusow did not honor the contracts.

68. Matusow made the Representations for the express purpose of inducing the Plaintiff to rely.

69. As Matusow foresaw and intended, the Plaintiff reasonably relied on the Representations.

70. The Representations were material in that the Plaintiff would not have entered into the contracts nor began to perform nor performed as much as he could in the circumstances without them.

**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

71. The Plaintiff has been damaged as a result of his reliances on the Representations by losing US $12,000 as of June 2018, as well as a percentage of the US $7 million phase for phase I and smaller percentages of phases II, III, and IV, and significant collateral opportunity costs.
72. All allegations, probabilities for the speculative portion, and specific damages shall be fully proven at jury trial.

### Count III – Negligent Misrepresentation

73. The Plaintiff realleges paragraphs 1-56 as if fully set out herein.
74. Pleading in the alternative, at the time Matusow made the Representations Matusow was acting in his professional capacity and had a pecuniary interest in the underlying transaction.
75. Matusow failed to exercise due care in making the Representations.
76. The Plaintiff justifiably relied on the Representations.
77. The Plaintiff was injured by Matusow's lack of due care and in making the Representations by losing $12,000 as of June 2018, as well as a percentage of the US $7 million phase for phase I and smaller percentages of phases II, III, and IV, and significant collateral opportunity costs.
78. All allegations, probabilities for the speculative portion, and specific damages shall be fully proven at jury trial.

WHEREFORE, PLAINTIFF PRAYS:

(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' breaches of contract and repudiations;

(b) As to Count II for all direct and consequential damages the Plaintiff incurred as a proximate result of Matusow's promissory fraud along with the imposition of exemplary damages to deter Matusow from committing such acts of fraud in the future;

(c) As to Count III for all direct and consequential damages the Plaintiff incurred as a proximate result of Matusow's negligent misrepresentations along with the imposition of exemplary damages to deter Matusow from committing such acts of fraud in the future;

(d) For reasonable compensation for the value of his time in representing himself while he cannot afford an attorney (*quantum meruit*);

(e) For reasonable future attorney's and paralegal fees and costs including travel costs and for the costs of this action and;

(f) For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED

*[signature: A. Wescott]*

Carl A. Wescott, *pro se*
Tuesday, January 4th, 2022

14
**PLAINTIFF'S LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; and NEGLIGENT MISREPRESENTATION;**

# KEN MATUSOW



Exhibit A

## CEO & Founder of Syngercity

Ken has been involved in the computer industry for over 25 years, principally in the area of product development. In 1988 he founded, and ran for 10 years, Détente Technology, a systems software consulting firm that specialized in operating systems, network/internet, and embedded systems product development. Starting with a staff of one, himself, Détente eventually grew to over 25 employees. Their clients included industry heavyweights such as Sun Microsystems, Microsoft, Novell, SGI, Siemens, Hyundai, and others. Détente either developed or helped develop products such as Digital TV set top boxes, network and embedded computer systems, and streaming media products.

In 1998 Détente was sold to Cadence Design Systems to form the core of the newly formed Embedded Systems Design Group. After the acquisition, Ken was named the Director of Embedded Systems where he led the developed of numerous products for the embedded systems market such video replay technology for the NFL, Digital TV products for the TV industry, cell phone related products, and a wide variety of other products. At that time Cadence Design was the world's largest product development consulting organization.

After leaving Cadence, he founded the technology consulting firm Synergicity. Synergicity focuses on solving business and technical problems for small to medium sized technology companies. In this capacity he has assisted with the development of technology and engineering strategies, the setting up of engineering/software resources, including outsourced resources, and the integration of technology/engineering efforts into a cohesive business strategy.

As an active angel investor with the Keiretsu Forum, he works with numerous startups to help raise capital, lead due diligence efforts, and provide general mentoring.

In addition, Ken has been involved with various computer and software related startups as a founder, board member, or advisor. He has participated on numerous panels as an entrepreneur.

## Details

- **Location :** Saratoga, CA, USA